UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

WACO DIVISION



| | |
|---|---|
| JAMES HAYNES, JR.,<br>　　Plaintiff, | §<br>§<br>§ |
| v. | §    CIVIL ACTION NO.<br>§    6:12-cv-00330-WSS-JCM |
| CAROLYN W. COLVIN[1],<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>　　Defendant. | §<br>§<br>§<br>§<br>§ |

### REPORT AND RECOMMENDATION OF
### THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE WALTER S. SMITH, JR.,
　　　 UNITED STATES DISTRICT JUDGE

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C) and Rules 1(h) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

### I. BACKGROUND AND STATEMENT OF THE CASE

James Haynes, Jr. (hereinafter "Plaintiff") seeks judicial review of a final decision of the Acting Commissioner of Social Security denying his claim for Disability Insurance

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act (Act), 42 U.S.C. § 405(g).

1

Benefits (DIB) under Title II of the Social Security Act ("the Act"). Plaintiff was born on January 9, 1969 and was 40 years old on January 27, 2009, the alleged disability onset date. *Tr.* 18, 71. He obtained a GED and worked as a truck driver prior to his claim. *Tr.* 31. Plaintiff filed an application for Title II and supplemental security income ("SSI") benefits on February 26, 2010 due to hepatitis C, irritable bowel syndrome, malignant melanoma, benign essential tremors, bipolar disorder, and panic attacks. *Tr.* 71, 78. The Agency initially denied Plaintiff's claim on June 7, 2010. *Tr.* 79. On June 21, 2010, Plaintiff asked the Agency for a reconsideration, which was subsequently denied on August 11, 2010. *Tr.* 85, 88. Thereafter, Plaintiff filed a request for an administrative hearing on September 2, 2010. *Tr.* 92. A *de novo* administrative hearing was conducted by Administrative Law Judge ("ALJ") Marguerite Lokey in Waco, Texas, on February 25, 2011. *Tr.* 26-70.

Plaintiff, represented by his former attorney Susan Rodriguez, appeared at the hearing and testified along with Thomas Irons, a vocational expert ("VE"), and Lupita Bermea, a hearing monitor. *Tr.* 28. The ALJ issued an opinion on November 10, 2011 concluding that Plaintiff was not disabled within the meaning of the Social Security Act. *Tr.* 11, 19.

The ALJ made a non-disabled determination through utilizing the five-step sequential evaluation process established by the Social Security Administration. *Tr.* 12. At step one, the ALJ ruled that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 27, 2009. *Tr.* 13. At step two, the ALJ found that Plaintiff had the following severe impairments: hepatitis C, bipolar disorder, benign essential tremors, history of skin cancer (melanoma), obesity, diarrhea, and panic attacks. *Tr.* 13. At step three, however, the ALJ found

that Plaintiff's impairment or combination of impairments did not equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Tr.* 13.

Prior to proceeding to step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work and to perform dexterous tasks with his fingers. *Tr.* 14. The ALJ additionally found that Plaintiff should avoid hazardous work, including work involving heights and dangerous machinery, and should work indoors where he has access to bathroom facilities. *Tr.* 14. The ALJ found that Plaintiff has the mental capacity to perform simple routine work with incidental contact with others; however, he should not regularly work directly with the public as part of his job. *Tr.* 14.

In making Plaintiff's RFC determination the ALJ considered all symptoms to the extent that she found them consistent with available objective medical evidence and other evidence in the record. *Tr.* 15. The ALJ determined that Dr. Teague's assessment was not supported by the available objective medical evidence in the record and therefore afforded it little evidentiary value. *Tr.* 17. Additionally, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with the ALJ's assessment of Plaintiff's RFC and were unsupported by the evidentiary record. *Tr. 17*. The ALJ considered Plaintiff's previous conviction for theft in evaluating his credibility of his testimony. *Tr.* 17.

At step four, the ALJ found, given Plaintiff's RFC, Plaintiff is unable to perform any past relevant work. *Tr.* 18. At step five, the ALJ determined that based on the vocational expert's testimony and considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers that exist within the national economy that Plaintiff can perform including:

"cleaner housekeeping," "binding machine [operator]," and "coin machine collector". *Tr.* 18-19. Accordingly, the ALJ found Plaintiff not disabled as defined in the Act.

Plaintiff timely appealed the ALJ's decision to the Appeals Council, but the requested review was denied on November 2, 2012. *Tr.* 6. This decision served as the final decision of the Commissioner of Social Security in regards to Plaintiff's claim. Plaintiff timely commenced the present action on December 10, 2012, seeking judicial review of the administrative proceedings. Pl.'s Compl. (ECF No.1). On January 15, 2014, this Court ordered the parties to submit briefs.

## II. JUDICIAL REVIEW

The Court's ability to review a Commissioner's denial of disability benefits "is limited to determining whether (1) the decision is supported by substantial evidence and (2) proper legal standards were used to evaluate the evidence." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Courts give higher deference to the Commissioner's findings if they are supported by substantial evidence. *Id.* The Court is not allowed to substitute its own judgment for that of the Commissioner's. *Davis v. Schweiker*, 641 F.2d 283, 285 (5th Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . the court shall review only the question of conformity with such regulations and the validity of such regulations." 42 U.S.C.A. § 405(g) (West).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938). If there is substantial evidence that supports the Commissioner's findings then that decision must be affirmed by the Court. *Martinez*, 64 F.3d at 173. The Court can only find that no substantial evidence exists when there is a conspicuous

absence of credible choices or when there is no contrary medical evidence. *Shannon v. Califano*, 485 F. Supp. 939, 940 (N.D. Tex. 1980).

To determine whether substantial evidence of a disability exists, Courts weighs four factors: (1) the available objective medical evidence; (2) the diagnoses and opinions of the claimant's treating or examining physician; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005). Even if the preponderance of evidence points in the claimant's favor, the Court may not reverse the ALJ's findings unless no substantial evidence exists that supports their finding. *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985); *Martinez*, 64 F.3d at 173 ((citing *Richardson*, 402 U.S. at 390)). The scope of review is limited to the facts in the record; the Court will not reweigh the evidence, try the issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In deciding a case, "[t]he court shall have [the] power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West). Reversal by the Court is only appropriate if the applicant is able to show that he/she was prejudiced by the ALJ's failure to develop the facts of his claim fully and fairly. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). There must be substantial evidence supporting the claimant's position for a Court to grant an award of benefits; "a judicial award of benefits is proper only where the proof of disability is overwhelming, or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

## III. ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

The legal standard for determining disability under the Act is whether a claimant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last continuously for at least twelve months. 42 U.S.C.A. § 423 (d)(1)(A). The claimant's impairments must be of such severity that the claimant is unable to perform previous work and cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C.A. § 423 (d)(2)(A). In determining whether an individual applicant is capable of performing "substantial gainful activity," a five-step sequential evaluation process is utilized. 20 C.F.R. § 404.1520(a)(1). If the Commissioner can determine that the claimant is disabled or not disabled at any step, a decision is made and the remaining steps are not considered. 20 C.F.R. § 404.1520(a)(4). Otherwise, the Commissioner proceeds to the next step. 20 C.F.R. § 404.1520(a)(4). The steps are summarized as follows:

(i) Whether the claimant is working in work that is considered a substantial gainful activity. If so, the claimant is not considered disabled.

(ii) Whether the medical severity of the claimant's impairment or combination of impairments significantly limits the claimant's mental or physical ability to do basic work. If it does not limit the claimant's ability to work, he is not considered disabled.

(iii) Whether the claimant's impairment(s) meets or equals one that is listed in 20 C.F.R. § 404.1520 Appendix 1. If the impairment meets or equals a listing in the appendix, the claimant is considered disabled without taking into consideration his age, education, and work experience.

(iv) Whether the claimant can still perform his past relevant work when considering his residual functional capacity. If the claimant can still perform his past relevant work, he is not considered disabled.

(v)  Whether the claimant, considering his residual functional capacity and age, education and work experience can make an adjustment for any other work that exists in significant numbers in the national economy. If the claimant can make the adjustment, then he is not disabled, but if he cannot, then the Commissioner will find that he is disabled.

*See* 20 C.F.R. § 404.1520(a)(4)(i)-(f); 20 C.F.R. § 404.1560(c).

The burden of proof is on the claimant to show with sufficient proof that he suffers from a disability for the first four steps of the analysis, but the burden shifts to the Commissioner for the last step. *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002). The Commissioner is responsible for providing evidence showing that other work exists in significant numbers in the national economy that the claimant can perform given his RFC and other vocational factors. 20 C.F.R. § 404.1560(c)(2). The Commissioner uses the RFC developed for step four for the claimant's past relevant work and does not need to provide any additional evidence regarding the claimant's RFC. 20 C.F.R. § 404.1560(c)(2). After step four, "the burden of proof then returns to the claimant to rebut the Commissioner's showing." *Masterson*, 309 F.3d at 272.

Evidence that a claimant submits or that the Commissioner obtains may contain medical opinions from a variety of medical sources reflecting their judgments regarding the claimant's condition. 20 C.F.R. § 416.927(a)(1). The opinions are considered with all of the relevant evidence in the record. 20 C.F.R. § 416.927(b). The Commissioner evaluates all medical opinions it receives and determines the weight of each opinion based on several factors including but not limited to: (1) examining relationship; (2) nature of the relationship (duration and frequency of visits); (3) supportability; (4) consistency with the record; (5) specialization of the physician; and (6) other factors the claimant brings to the Commissioner's attention. 20 C.F.R. § 404.1527. Although ALJs consider medical testimony when making their decisions, "that opinion is but additional evidence, however, to be considered by the judge along with other

7

'medical evidence' in reaching an independent determination." *Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927, 930 (6th Cir. 1983) (citing *Sullivan v. Weinberger*, 493 F.2d 855 (5th Cir. 1974).

When determining whether a claimant is legally disabled Courts give considerable weight to the medical testimony of their primary physician because they are the most familiar with the claimant's injuries and medical background. *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir. 1985). However, this does not mean that the treating physician's opinions are conclusive in regards to determining disability status because the ALJ is solely responsible for making this determination. *Greenspan*, 38 F.3d at 237. The ALJ may decide to attribute little or no weight to that physician's testimony if good cause is shown. *Id.* Courts recognize that good cause is shown to the contrary of the physician's opinions when "his statement as to disability is so brief and conclusory that it lacks strong persuasive weight, is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence." *Scott*, 770 F.2d at 485. The ALJ thus determines the weight given to a medical opinion; however, the reasons in the determination for the weight given must be explained. *See* 20 C.F.R. § 404.1527(c)(2). If there are inconsistencies between evidence in the record, including medical opinions, the ALJ will weigh all the other evidence and, if possible, make a determination regarding claimant's legal disability status. *Greenspan*, 38 F.3d at 237.

In assessing a claimant's RFC the claimant's physical exertion capacity for work is determined based on the evidentiary record. 20 C.F.R. § 404.1567. The Commissioner classifies the physical exertion requirements of work in the national economy into sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. A determination of 'light work' involves

lifting no more than 20 pounds with frequent lifting of 10 pounds, a good deal of walking/standing, and if the claimant is sitting, pulling/pushing of arm/leg controls. 20 C.F.R. § 404.1567(b). A determination that the claimant can perform 'medium work' entails lifting no more than 50 pounds with frequent lifting of 25 pounds, while 'heavy work' entails lifting no more than 100 pounds at a time with frequent lifting of 50 pounds. 20 C.F.R. § 404.1567(c)-(d). A determination that the claimant can perform 'very heavy work' involves lifting of objects weighing more than 100 pounds at a time with frequent lifting of objects weighing 50 pounds. 20 C.F.R. § 404.1567(e). If a determination is made that a claimant can perform 'very heavy work' then they are capable of performing 'light,' 'sedentary,' 'medium,' and 'heavy' work. 20 C.F.R. § 404.1567(a)-(e).

The RFC assessment is a function-by-function assessment based on exertional and nonexertional capacity. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996). As with exertional capacity, nonexertional capacity is expressed in work-related functions. *Id.* Work-related mental functions and activities include the abilities to: (1) follow and understand given instructions; (2) make work-related decisions and judgments; (3) respond appropriately to supervision, co-workers, and other stimuli; and (4) deal with change in the work environment. *Id.* Without the function-by-function assessment of the individual's mental and physical capacities it is not possible to determine if the claimant is able to perform past relevant work or other types of work. *Jones v. Astrue*, No. 3:11-CV-3416-M BH, 2013 WL 1293900, at *16 (N.D. Tex. Mar. 7, 2013). "[E]ven if the ALJ fails to conduct a function-by-function analysis, he satisfies this requirement if he bases his RFC assessment, at least in part, on a state medical examiner's report containing a function-by-function analysis." *Id.*

## IV. ISSUES PRESENTED

Plaintiff raises the following issues for the Court's review:

1. The ALJ erred by not considering the factors listed in 20 C.F.R. §§ 404.1527, 416.927 before declining to give weight to the opinions of the claimant's treating physician.

2. The ALJ's evaluation of the claimant's RFC is fatally flawed and the finding is not based on substantial evidence.

3. The record warrants an award of benefits, or in the alternative a remand. [2]

## V. DISCUSSION

### A. Plaintiff's Claim That the ALJ Did Not Consider All of the Factors in 20 C.F.R. §§ 404.1527, 416.927 Before Affording Little Weight to Dr. Christopher Teague's Opinion.

Plaintiff alleges that the ALJ failed to give deference to the opinion of Dr. Christopher Teague, the treating physician. Pl.'s Br. at 6. The ALJ, under its authority, decided to afford little weight to Dr. Teague's assessment because it is not supported by the objective evidence in the record. *Tr.* 17. The ALJ determined that Dr. Teague's assessment on February 18, 2011 (Medical Opinion RE: Ability to Do Work-Related Activities (Mental)), taken on its own would be grounds for a determination of disability, but that this opinion was unsupported by the record, including Dr. Teague's previous examinations. *Tr.* 17. Several of Dr. Teague's examinations indicated that Plaintiff was of normal mood with no acute distress. *Tr.* 399, 404, 407, 413, 414, 417, 422. These examinations are inconsistent and do not support the determination that Dr. Teague later made in his February 18, 2011 opinion (Medical Opinion RE: Ability to Do Work-Related Activities (Mental)) in which he stated that Plaintiff is unable to work. *Tr.* 17.

---

[2] Plaintiff does not present the award of benefits or cause for remand as a separate issue but rather brings it forth in his relief sought.

Plaintiff asserts that the Family Practice Center records of Dr. Teague's examination reference his severe depression, panic attacks, anxiety, and suicidal ideations. Pl.'s Br. at 6. However, Dr. Teague indicated that panic attacks were not present as of July 12, 2010. *Tr.* 413. The reports that indicated the presence of the panic attacks were from examinations prior to the one conducted on that day. *Tr.* 414, 417, 422, 427. Although Gwen Waddle RNC, FNP notes on July 12, 2010 that Plaintiff is a suicide risk, Dr. Teague's examinations on the same date and on August 2, 2010 state that Plaintiff does not possess suicidal ideations. *Tr.* 407, 413, 460. The ALJ recognized Plaintiff's depression but determined that the objective evidence does not reflect that the depression would make him unable to perform routine work. *Tr.* 17.

Plaintiff claims that the ALJ neglects to mention Dr. Frensley's finding that Plaintiff has a Global Assessment of Functioning (GAF) score of 48, and the fact that she listed "inability to maintain employment" under Axis IV of her examination. Pl.'s Br. at 7. "Federal courts have declined to find a link between an individual's GAF score and [the] inability to work." *Andrews v. Astrue*, 917 F. Supp. 2d 624, 638 (N.D. Tex. 2013) (citing 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)) (declining to endorse the GAF scale for use in Social Security and SSI disability programs and stating that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"). Additionally, the examination does not identify that Plaintiff is unable to work under Axis IV, but rather that his inability to sustain employment is one of the psychosocial stressors that impact him. *Tr.* 308. Axis IV deals with life stressors that impact the plaintiff's mental conditions. *Molaison v. United States*, No. CIV. A. 93-478, 1994 WL 236322 (E.D. La. May 20, 1994), aff'd, 51 F.3d 1042 (5th Cir. 1995).

Plaintiff further alleges that according to SSR 96-6P, the ALJ should not have ignored any medical source opinions or legal conclusions. Pl.'s Br. at 7. The ALJ did not ignore any of the medical source opinions, but rather looked at and weighed all of the objective evidence in the record. *Tr.* 17. The weight given to opinions depends on the degree to which evidence supports that opinion considering assessments from other treating and examining sources. 20 C.F.R. § 404.1527(c)(ii)(3). Dr. Frensley's consultative psychological examination indicated that Plaintiff's thoughts were logical and goal oriented, his concentration and ability to carry out instructions was unimpaired, and that he is capable of abstract thought. *Tr.* 307-309. She also indicated Plaintiff's social judgment was grossly intact, he possessed a fund of knowledge above average, and that his remote memory was intact. *Tr.* 308. An examination by Central Texas Neurological Association supports this assessment by indicating that Plaintiff displayed normal behavior, affect and mood, and was capable of well-organized thoughts. *Tr.* 380. If there are any inconsistencies between evidence in the record, including medical opinions, the ALJ will weigh all the other evidence and see whether she can decide if the claimant is disabled. *Greenspan*, 38 F.3d at 237. The ALJ determined that Dr. Teague's assessment was not supported by the evidence and attributed little weight to it. *Tr.* 17. If there is good cause shown that the physician's opinion is brief and conclusory, lacks persuasive weight, or is unsupported by the evidence, the Court can afford it little weight. *Scott*, 770 F.2d at 485.

Plaintiff also claims that under SSR 96-5P, 20 C.F.R. §404.1512(e)(1), and 20 C.F.R. §416.912(e)(1) the ALJ should have made every reasonable effort to re-contact the source of the medical opinion since she found that the treating source assessment was not supported by the evidence. Pl.'s Br. at 7. Fifth Circuit case law indicates that the ALJ is under no obligation to re-

contact a treating physician when that physician's opinion is inconsistent with other substantial evidence in the record. *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 513 (S.D. Tex. 2003). The ALJ found that Dr. Teague's assessment was not supported by all the other evidence in the record and was therefore not required to re-contact Dr. Teague. *Tr. 17*.

Plaintiff further alleges that the ALJ's decision to give little weight to Dr. Christopher Teague's medical opinion without considering all of the six factors set forth in 20 C.F.R. §§ 404.1527, 416.927 constitutes an error. Pl.'s Br. at 5-6. The ALJ considered the opinions from the Family Medical Center, Neurology Associates of Fort Worth, Dr. Carr, and Dr. Frensley in making her decision. *Tr. 15-18*. The ALJ should seek clarification or additional evidence if there is no other medical opinion evidence. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The Fifth Circuit characterized *Newton* as merely "requiring, in the absence of competing first-hand medical evidence, that the ALJ consider each of the § 404.1527(d) factors in evaluating the medical opinion of a treating physician." *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 510 (S.D. Tex. 2003) (citing *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)). Since there is first-hand medical evidence available to the ALJ, the ALJ was not required to perform a detailed analysis of the six factors in 20 C.F.R. §§404.1527(d), 416.927(d).

**B. Plaintiff's Claim That the ALJ's Evaluation of the Claimant's Residual Functional Capacity is Not Supported by Substantial Evidence.**

Plaintiff alleges that the ALJ implicitly rejected Dr. Teague's, Dr. Blaine Carr's, and Dr. Kelvin Samaratunga's findings when determining Plaintiff's RFC. Pl's Br. at 9. The ALJ found that Plaintiff has the RFC to perform light work, with the ability to occasionally perform dexterous tasks with his fingers. *Tr. 14*. The ALJ further concluded that Plaintiff retains the ability to perform simple routine work but should avoid work hazards, work indoors near a

bathroom facility, and be limited to incidental contact with others. *Tr.* 14. Although the ALJ decided to give Dr. Teague's unsupported assessment little weight, she did consider prior examinations conducted by Dr. Teague at the Family Diagnostic Medical Center in determining Plaintiff's RFC. *Tr.* 15-17. In these visits, Plaintiff was described as being in a normal mood with no acute distress. *Tr.* 16. Ultimately, the ALJ did not find that Dr. Teague's opinions were conclusive due to the presence in the record of other competing medical opinions and "because [they were] not supported by the objective evidence discussed throughout [her] decision." *Tr.* 17.

Dr. Carr's evaluation of Plaintiff's RFC states that Plaintiff "can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work settings." *Tr.* 336. Dr. Carr marked Plaintiff as moderately limited in only 6 out of the 20 items with the rest of the mental RFC assessment indicating that Plaintiff is not significantly limited. *Tr.* 334-35. The items checked as moderately limited include plaintiff's ability to understand, remember, and carry out detailed instructions, his ability to work in cooperation and proximity with others, and his ability to interact appropriately with the general public. *Tr.* 334-35. The ALJ's determination that Plaintiff can perform simple routine work but that he should be limited to incidental contact with others is consistent with Dr. Carr's mental RFC assessment. *Tr.* 14, 336.

Dr. Samaratunga's physical RFC assessment indicates that Plaintiff's fine manipulation (fingering) is limited and attributed him with a medium physical exertion requirement. *Tr.* 329 Dr. Samaratunga assessed Plaintiff as being able to occasionally lift up to 50 pounds with frequent lifting of 25 pounds, standing/walking of about 6 hours, and unlimited pulling/pushing

of arm/leg controls. *Tr.* 327. Dr. Samaratunga did not note any other postural, manipulative, visual, communicative, or environmental limitations. *Tr.* 328-31. "If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). The ALJ's determination that Plaintiff can perform light work is consistent with Dr. Samaratunga's physical RFC assessment.

Plaintiff contends that the ALJ based the RFC on her own medical expertise thereby "playing doctor." Pl's Br. at 10. The ALJ's determination is not only consistent with the assessment of Dr. Carr and Dr. Samaratunga, but is also supported by Dr. Blair's, Dr. Little's, and Dr. Frensley's assessments. *Tr.* 287, 292, 302, 309, 323, 380. Dr. Blair stated that Plaintiff had a moderate intentional tremor of both hands, but that this benign essential tremor is not a condition that would prevent him from working. *Tr.* 287, 290. He stated Plaintiff's mental status as alert and well oriented, with intact intellect and memory. *Tr.* 287. Dr. Blair determined that other than the benign essential tremor, the remainder of the neurological examination was within normal limits in regards to Plaintiff's age. *Tr.* 289. Dr. Little reported that the action tremor on the left and right hands were mild and that Plaintiff possessed no limitation of his range of motion in his back or his joints. *Tr.* 301. He also reported that Plaintiff's mental status is normal, his fund of knowledge adequate, and his thoughts well organized. *Tr.* 301-02. Dr. Frensley determined that Plaintiff's comprehension and ability to carry out instructions is not impaired, but that his ability to interact effectively with peers and coworkers is affected by his condition. *Tr.* 309. The doctors' medical assessments constitute substantial evidence within the record. Therefore, the ALJ's determination that that Plaintiff has the RFC to perform light work (with

some modifications), including "cleaner housekeeping," "binding machine [operator]," and "coin machine collector," is based on substantial evidence in the record. *Tr.* 18-19.

Plaintiff further alleges that the ALJ did not include a function-by-function assessment of each of the work-related mental activities that are relevant under SSR 96-8p since she did not adopt the findings of the consultative exam report. Pl's Br. at 9-10. SSR 96-8p requires the analysis of the following four work-related mental activities: (1) understanding, remembering, and carrying out instructions; (2) using judgment in work decisions; (3) responding appropriately to supervision and peers, and (4) dealing with changes in a routine setting. *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996). However, SSR 96-8p does not require an exhaustive discussion of each work-related mental activity as long as they are considered in the ALJ's analysis. *See Walton v. Astrue*, No. 10-815, 2011 WL 195975, at 9-10 (N.D. Tex. Jan. 20, 2011). Here, the ALJ satisfied this requirement by basing her opinion on Dr. Carr's mental RFC assessment which contains a function-by-function analysis. *Tr.* 17, 334. The mental RFC assessment performed by Dr. Carr analyzed Plaintiff's: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation. *Tr.* 334-35. Therefore, the ALJ complied with SSR 96-8p by basing her decision on the evidence within the record. *Id.*

### C. Plaintiff's Request for Remand and Granting of Benefits

Plaintiff, citing 42 U.S.C.A. § 405(g), requests that this case be remanded with an order to award benefits in accordance with a ruling on his behalf. Pl's Br. at 10. Although the "[C]ourt shall have power to enter . . . modif[y] . . . or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," under *McQueen v. Apfel*,

courts may only remand with an instruction to make an award if the record definitively shows that the claimant is entitled to benefits and that the ALJ's opinion is unsupported by substantial evidence. *McQueen v. Apfel,* 168 F.3d 152, 157 (5th Cir. 1999); 42 U.S.C.A. § 405(g) (West).

Here, the record shows that the ALJ's decision is supported by substantial evidence and that Plaintiff has failed to present any evidence entitling him to an award of benefits. Therefore, Plaintiff has not demonstrated that he is entitled to remand of the Commissioner's decision with an order to grant the benefits sought. Thus remand is inappropriate.

## VI. RECOMMENDATION

Based on the foregoing discussion, the Court recommends that the final decision of the Commissioner be **AFFIRMED**. The parties may wish to file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). To the extent that a party has not been electronically served by the Clerk with this Report and Recommendation pursuant to the CM/ECF procedures of this District, the Clerk is directed to

send such party a copy of this Report and Recommendation by a national overnight delivery service having confirmation of pickup and delivery.

**SIGNED** this 29th day of June, 2015.

JEFFREY C. MANSKE
U.S. MAGISTRATE JUDGE